IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SUSAN CORLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 2:16-cv-1912-TMP |
| ) | |
| NANCY A. BERRYHILL, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM OPINION**

**I.    Introduction**

The plaintiff, Susan Corley, appeals from the decision of the Commissioner[1] of the Social Security Administration ("Commissioner") denying her application for a period of disability and Disability Insurance Benefits ("DIB"). Ms. Corley timely pursued and exhausted her administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). The

---

[1] The court takes judicial notice that Nancy A. Berryhill is now the Acting Commissioner of Social Security. The Clerk is DIRECTED to change the style of the case accordingly.

parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 626(c). (Doc. 18).

Ms. Corley was 52 years old at the time of the Administrative Law Judge's ("ALJ's") decision,[2] and she has a high school education. (Tr. at 21). Her past work experiences include employment as a receptionist, administrative assistant/secretary, bookkeeper, purchasing clerk, and payroll clerk. (Tr. at 20-21). Ms. Corley claims that she became disabled on January 15, 2010, due to bipolar disorder with rapid cycling, anxiety, depression, diverticulitis, sleep apnea, fibromyalgia, irritable bowel syndrome ("IBS"), gastroesophageal reflux disorder ("GERD"), hidradenitis suppurativa,[3] folliculitis, and methicillin-resistant staphylococcus aureus ("MRSA"). (Tr. at 226).

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R.

---

[2] This appeal related to Ms. Coley's second hearing before the ALJ. His first decision that she was not disabled was vacated and remanded by the Appeals Council, with instructions that the ALJ: (1) further consider the effects of the degenerative joint disease, (2) further consider statements by John Neville, Ph.D., recommending that the claimant needed a representative payee, and (3) provide specific references to evidence relating to the RFC and weight given to opinion evidence. (Tr. at 84-85).

[3] Hidradenitis suppurativa is defined by the Mayo Clinic as "a rare, long-term skin condition that features small, painful lumps under the skin," that can worsen over time and develop into open wounds. *See* https://www.mayoclinic.org/diseases-conditions/hidradenitis-suppurativa/symptoms-causes/syc-20352306 (viewed March 22, 2018).

§§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If she is, the claimant is not disabled and the evaluation stops. *Id*. If she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id*. The decision depends upon the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments fall within this category, she will be found disabled without further consideration. *Id.* If they do not, a determination of the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step. 20 C.F.R. §§ 404.1520(e), 416.920(e). Residual functional capacity is an

assessment based on all relevant evidence of a claimant's remaining ability to do work despite her impairments. 20 C.F.R. § 404.1545(a).

The fourth step requires a determination of whether the claimant's impairments prevent her from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do her past relevant work, the claimant is not disabled and the evaluation stops. *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience, in order to determine if she can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id.* The burden of demonstrating that other jobs exist which the claimant can perform is on the Commissioner; and, once that burden is met, the claimant must prove her inability to perform those jobs in order to be found to be disabled. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

Applying the sequential evaluation process, the ALJ found that Ms. Corley has not been under a disability within the meaning of the Social Security Act from the date of onset through the date of his decision. (Tr. at 22). He determined that

Ms. Corley has not engaged in substantial gainful activity since the alleged onset of her disability. (Tr. at 13). According to the ALJ, the plaintiff's bipolar disorder, depressive disorder, and degenerative joint disease of the knees are considered "severe" based on the requirements set forth in the regulations. (Tr. at 14). He further determined that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 14). The ALJ did not find Ms. Corley's allegations regarding the intensity, persistence, and limiting effects of her symptoms to be entirely credible. (Tr. at 17). He determined that the plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) with the following limitations: she will have occasional difficulty remembering multi-step and complex instructions but no difficulty with simple work procedures; she will have problems carrying out detailed and complex instructions but no difficulty carrying out simple instructions; she will require breaks every two to four hours during a workday; her contact with coworkers, supervisors, and the public should be casual, infrequent, non-intensive, and not prolonged; she can accept supportive feedback; she will require assistance with long-term planning but should have no difficulty with daily work routines. (Tr. at 16).

According to the ALJ, Ms. Corley is unable to perform any of her past relevant work. (Tr. at 20). The ALJ concluded his findings by stating that Plaintiff was not disabled at any time from the alleged onset date through the date last insured. (Tr. at 22).

## II. Standard of Review

This court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative

agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this court finds that the evidence preponderates against the Commissioner's decision, the court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

### III. Discussion

Ms. Corley alleges that the ALJ's decision should be reversed and remanded because the ALJ: (1) failed to properly apply Social Security Ruling 96-7p[4] in

---

[4] SSR 96-7p, which was in effect at the time of the claimant's adjudication by the ALJ, has been superseded by SSR 16-3p, which took effect in March of 2016. The new regulation removes the term "credibility" from the policy, and clarifies that "subjective symptom evaluation is not an examination of an individual's character." SSR16-3p, 2016 WL 1119029 at *1. Plaintiff does not argue that the newer regulation should apply retroactively, and the Eleventh Circuit Court of Appeals has recently determined that it does not. *Hargress v. Soc. Sec.*

evaluating the credibility of the Plaintiff's allegations regarding her limitations, and (2) failed to assign proper weight to the opinions of the Plaintiff's treating psychiatrist, Dr. Fred Habeeb, Jr. (Doc. 14). The Commissioner has asserted that the ALJ followed the controlling law in evaluating the credibility of the plaintiff's description of her limitations and symptoms, and that he properly weighed Dr. Habeeb's opinions in accordance with the governing standards. (Doc. 16).

### A.  Assessment of Credibility

The Eleventh Circuit Court of Appeals has held that an ALJ must "clearly 'articulate explicit and adequate reasons' for discrediting the claimant's allegations of completely disabling symptoms." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (2005) (quoting *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995). A credibility determination is not permitted to be a "broad rejection" that would demonstrate to the court that the ALJ did not consider the claimant's medical condition as a whole. *Dyer*, 395 at 1211 (quoting *Foote*, 67 F.3d at 1561). An ALJ has "wide latitude as a finder of fact" to evaluate credibility, but that evaluation must rest on a "clear articulation" of the relevant facts and the governing law. *See Owens v. Heckler*,

---

*Admin., Comm'r*, No. 17-11683, 2018 WL 1061567 (11th Cir. Feb. 27, 2018) ( holding that the rule "applies only prospectively and does not provide a basis for remand"). Accordingly, the court evaluates the ALJ's assessment in light of SSR 96-7p.

748 F.2d 1511, 1514 (11th Cir. 1984). Pursuant to Social Security Ruling 96-7p, the ALJ has a duty to consider the claimant's explanations for her lack of medical treatment or her noncompliance with medical advice, without prejudging her. It has been established that an "ALJ's discretionary power to determine the credibility of testimony is limited by his obligation to place on the record explicit and adequate reasons for rejecting that testimony." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Because the ALJ in this case recited numerous specific instances in which the plaintiff failed to comply with her medication regimen, even though the medications apparently helped to limit her symptoms of depression, his reasons for discounting Ms. Corley's credibility were both explicit and adequate.

The ALJ addressed reasons for rejecting Ms. Corley's testimony regarding her physical and mental limitations, noting that, while the plaintiff listed numerous physical impairments as the cause of her disability, she testified that the reason she could not work was her depression and that she did not know if any of her physical impairment affected her ability to work.[5] The ALJ further noted that multiple doctors had recorded Ms. Corley's failure to take the medications that were

---

[5] In his findings, the ALJ stated that the plaintiff "testified at the hearing she was unable to work due to her mental impairment" and that "she did not know if her physical impairments prevented her from working…." (Tr. at 18). In her brief, under a heading entitled "Summary of Testimony," the plaintiff adopted "the ALJ's recitation as true and correct." (Doc. 14, at 2).

prescribed for her mental disorders.[6] (*See* Tr. at 336, 396, 409, 416-419, 443, 444, 469, 470). In addition, he pointed out that, while she maintained that she could not function in the workplace because of her mental disorders, she had worked at approximately twenty jobs and had been terminated only once. Two jobs ended because of a layoff, and the rest ended because she quit. (Tr. at 18-19, 516). Ms. Corley testified at her second hearing that she "just can't seem to keep" a job because she has "problems with people." (Tr. at 516).

The ALJ also recited the plaintiff's admission that she had applied for and received unemployment benefits after ending her employment because of a lay-off, which indicated that she had represented that she was capable of working after the alleged onset date. *Id.* Another specific reason the ALJ gave for his negative assessment of her credibility was that she listed daily activities that were inconsistent with her allegations of disability. He noted that Ms. Corley was able to do household chores, help with caring for pets, care for her family, prepare meals, drive, shop, use a computer, crochet, go fishing, garden, and attend church. (Tr. at 19).

---

[6] Indeed, there is medical evidence in the record that the medication is helpful. For example, on December 19, 2012, she complained of depression and was prescribed Prozac. (Tr. at 438). At her next visit to Alabama Counseling, LLC, on January 28, 2013, she reported "I do feel better." Similarly, in sessions in June and August of 2012, she reported feeling "a little better." (Tr. at 439-440). *See also* Transcript at 334, 392, 467.

The ALJ articulated explicit and adequate reasons for deeming the plaintiff's allegations "not entirely credible." The opinion reflects that the ALJ considered Ms. Corley's medical condition, both physical and mental, as a whole. Accordingly, his decision is supported by substantial evidence and is in accord with the governing law.

### B. Treating Physician's Assessment

The claimant asserts that the Commissioner failed to give proper weight to the opinion of her treating psychiatrist, Dr. Habeeb, who opined that Ms. Corley was "not able to maintain employment, of any kind." (Doc. 14, pp. 11-12; tr. at 460). The ALJ gave Dr. Habeeb's opinion little weight, stating that the physician's statements were inconsistent with his treatment records and involved a determination of her ability to work that is reserved to the Commissioner. (Tr. at 19).

Under prevailing law, a treating physician's testimony is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1159 (11th Cir. 1997) (internal quotations omitted). The weight to be afforded a *medical* opinion regarding the nature and severity of a claimant's impairments depends, among

other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). "Good cause" exists for an ALJ not to give a treating physician's opinion substantial weight when the "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) ... was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good cause" exists where the opinion was contradicted by other notations in the physician's own record).

In this case, the opinion expressed in Dr. Habeeb's letter of August 2, 2013, is inconsistent with Dr. Habeeb's own records, which consistently noted that Ms. Corley showed improvement when she was compliant with her medication. (Tr. at 436-44, 467-480). While Dr. Habeeb's records do reflect that the plaintiff suffered from persistent depression and anxiety, the overall medical records show that her conditions improved when she was compliant with medication and that she did not

require more intensive therapies or hospitalizations. For example, Dr. Habeeb described Ms. Corley on June 25, 2012, as "alert, pleasant, coherent, stable mood (but some negative, pessimistic thinking), non-psychotic." (Tr. at 440). On January 15 and 28, 2013, she reported to Dr. Habeeb that she felt better after changing her medication to Prozac. (Tr. at 471). Plaintiff argues that the ALJ "picks and chooses isolated notations" from Dr. Habeeb's records, but the court finds that the ALJ viewed the records in their entirety and viewed the plaintiff's longitudinal record, which, on the whole, do not describe a debilitating condition.

Furthermore, it is well established that opinions such as whether a claimant is disabled, the claimant's residual functional capacity, the application of vocational factors, and whether the claimant is able to work "are not medical opinions, .. . but are, instead, opinions on issues reserved to the Commissioner." The ALJ is not required to accept a treating physician's opinion that a claimant is not able to maintain any employment. Likewise, this court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The court instead looks to the doctors' evaluations of the claimant's condition and the medical consequences thereof, not their opinions of the legal consequences of his

[or her] condition." *Lewis*, 125 F.3d at 1440. Such statements by a physician are relevant to the ALJ's findings, but they are not determinative, because it is the ALJ who bears the responsibility of assessing a claimant's residual functional capacity. *See, e.g.*, 20 C.F.R. § 404.1546(c). The ALJ has done that here, and there is substantial evidence in the record supporting his conclusions.

In this case, the ALJ carefully reviewed the treating psychiatrist's records, and heeded the *medical* opinions therein. It is only the opinion regarding Ms. Corley's capacity to do work that was given little weight. The ALJ clearly articulated "good cause" for the limited weight he gave to Dr. Habeeb's disability assessment. Therefore, the ALJ did not err in failing to give the treating physician's opinion more weight. The objective medical and other evidence supports the ALJ's conclusion that Ms. Corley's conditions did not cause disabling limitations and instead shows that she could perform a reduced range of light work.[7]

---

[7] Indeed, scattered throughout Dr. Habeeb's treatment notes are expressions by the plaintiff herself that she believed she would feel better if she were active and had something to do that gives her a purpose. (Tr. at 469, 471, 475).

## IV. Conclusion

Upon review of the administrative record, and considering all of Ms. Corley's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and is in accord with the applicable law; accordingly, the decision is AFFIRMED.

DATED this 23rd day of March, 2018.

_____
T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE